Mr. Justice Wylie
delivei’ed the opinion of the court:
These several actions having been brought by the plaintiffs against the defendants on as many promissory notes, all of the same date and for like amounts, and the several issues involving the same questions, the cases were consolidated and tried together.
The following is a copy of one of these notes:
“ Washington, D. C., November 1, 1873.
“ $550.00. [Secured by deed of trust.]
“ One year after date we promise, for ourselves and our successors, to pay to Charles A. McEuen, or order, five hundred and fifty dollars, value received, at the National Metropolitan Bank, with interest until paid, at the rate of eight per cent, per annum, payable semi-annually.
“ Frederick A. Holden, Thomas W. Miller,
“ Charles Marshall, George W. Francis, Jr.,
“ William Grinsted, John B. G. Baxter,
■ “ George Augerton, J. E. Engle,
“ Vestrymen of Si. Jam.es’ Parish.”
The interest on one of these notes. is credited to May 3, 1876, by an endorsement of McEuen, made 15th July, 1876. The note was then overdue, and was probably in McEuen’s hands.
Interest on the other notes is credited, by similar endorsements, to May 3, 1874.
No evidence seems to have been given as to the date when these notes were transferred to the present holders, or whether they were all transferred at the same time, or at different times, or for what consideration.
Plaintiffs’ counsel having proved the execution of the notes, and McEuen’s endorsement of them, gave no further evidence, relying upon his prima-facie case thus made out.
This court has judicial knowledge, however, of the act of Congress approved Juné 20, 1874, which made provision for winding up the affairs of the Freedman’s Bank, as of an insolvent institution, and for the appointment of commissioners for that purpose. We are apprised, also, from the passage *581 of several subsequent acts, as well as from public reports made by the commissioners, that, in fact, the Freedman’s Bank did fail immediately after the passage of the act of 20th June, 1874, and that it had been insolvent for a long period anterior to that date.
It seems to be certain, therefore, that at least one of these notes, and probably all of them, were in the hands of McEuen at the time of the bank’s failure in June, 1874, and were not transferred till after the maturity of two of them.
"What effect these circumstances might have upon the rights of the parties in the present controversy, is not a matter for consideration at present, but, as the ease is to go back for another trial, we have thought it well to mention them.
The notes were given as consideration for several lots of land in this city which the defendants purchased from Mc-Euen for the use of the Parish of St. James’ Protestant Episcopal congregation.
The deed from McEuen bears date the 10th of November, 1873, and conveys the title to the defendants as “The Vestry of the Parish of St. James in the said city of Washington,” warrants the title, and contains the usual covenant for further assurance.
On the same date these same grantees executed their deed of trust, in their capacity as the vestry of said parish, to William H. Ward, to secure the notes which had been given for the purchase-money. This deed of trust contains the following recital:
“ Whereas the said parties of the first part, being indebted to Charles A. McEuen in the sum of .sixteen hundred and fifty dollars ($1,650), being for the purchase-money of the piece or parcel of ground or real estate hereinafter described, have made, signed, and delivered to Charles A. McEuen three certain promissory notes, bearing date on the first day of November, in the year of our Lord one thousand eight hundred seventy-three, each for the sum of five hundred and fifty dollars, and made payable with interest, at the rate of eight per cent, per annum, payable semi-annually, to the order *582 of Charles A. McEuen, in one, two, and three years after date respectively; and in order to secure the payment of said notes and the said interest, the said parties of the first part have executed these presents.”
Other parts of deed, by the use of the word “successors” instead of heirs, show that these parties in the whole transaction intended to act, and were understood by McEuen to be acting, in their capacity as representatives of the parish, and not for themselves personally.
Defendants then gave evidence showing, or, at least, tending to show, that previously to the date of these deeds and notes the Parish of St. James, in the city of Washington, D. C., had been organized, and that defendants had been elected vestrymen of the parish, in accordance with the canonical requirements of the Protestant Episcopal Church of the Diocese of Maryland, of which the District of Columbia was a part. No exception appears to have been taken by the plaintiffs’ counsel to the introduction of this evidence, and the evidence showed that the parish had been regularly organized, as required by the canons of the church and the act of 1798, chapter 24.
No further evidence was given on either side. The court thereupon instructed the jury to find a verdict in favor of the plaintiffs for the amount due upon the notes, to which instruction defendants’ counsel excepted.
Subsequently, a motion in arrest of judgment was entered on the part of defendants, which, after argument, was overruled by the court and judgment entered upon the verdict in each case, and defendants again excepted.
The act of Maryland of November, 1798, chapter 24, is entitled “An act for the establishment of vestries for each parish in the State,” and contains thirty-four sections.
The twenty-eighth section declares “ that the vestrymen of' every parish in this State, for the time being, shall be, and they are hereby declared to be, one community, corporation, and body politic forever, by the name of the vestry of the parish to which they severally belong, and by the same name they and *583 their successors shall and may have pei’petual succession, and shall and may at all times hereafter be persons able and capable in law to purchase, take, and hold, to them and their successors, in fee, or for any less estate or estates, any lands, tenements, hereditaments, rents, or annuities, within this State, by the gift, bargain, sale, or devise of any person or persons, bodies politic and corporate, capable of making the same, and such lands, tenements, or hereditaments to rent or lease in such manner as they may judge most conducive to the interests of their respective parishes, and also to take and receive any sum or sums of money, and any kind of goods and chattels, which may or shall be given, sold, or bequeathed uuto them by any person or persons, bodies politic or corporate, capable to make a gift, sale, or bequest thereof, and to apply the same for the use of their respective parishes, as hereinbefore directed; provided, that the clear yearly value of the'estate of any vestry (exclusive of the rents of pews, collections in churches, funeral charges, and the like) shall not exceed two thousand dollars.”
Section 9 declares “ that the vestry of each parish, for the time being, as trustees of the parish, shall have an estate in fee-simple in all churches and chapels, and in all glebes and other lands, and shall have good title and estate in all other property heretofore belonging to the Church of England, or which shall hereafter belong to the said church, now called ‘ The Protestant Episcopal Church in Maryland;’ and it shall be lawful for such vestry so to manage and direct all such property as they may think most advahtageous to the interests of parishioners, and they shall also have the property in all books, plate, and other ornaments belonging to said churches and chapels, or any of them.”
Section 31 confers on the vestries the power of purchasing at any time a quantity of land, not exceeding two acres, for a burial ground, or site for a church, or parsonage, &e.
By the first section of the act of Congress approved 27th February, 1801, entitled “An act concerning the District of Columbia,” it was declared “ that the laws of the State of *584 Maryland, as they now exist, shall be and continue in force in that part of the said District which was ceded by that State to the United States, and by them accepted as aforesaid.”
This statute of 1798 was at that time in force in Maryland, and thus became the law of this District. It has never been repealed. On the contrary, it was recognized as being the law by an act of the late Legislature of the District, approved June 27, 1873, entitled “An act for the relief of parishes of the Protestant Episcopal Church in the District of Columbia,” which was itself ratified by act of Congress approved March 28, 1874, ch. 72. It was also recognized, and one of its provisions enforced, by a decision of the late Circuit Court of this District in Maurs v. The Vestry of St. John’s Parish, 4 Cr. C. C. R., 116.
By the express language of this act, each parish vestry is constituted a corporation — or, rather, in the terms of the act itself, “ the vestrymen of every parish, for the time being,” constitute a corporation. In the present case, therefore, the notes in question are the notes of the corporation itself, and in this respect differ materially from promissory notes signed by individuals describing themselves as agents. This distinction was remarked by the court in Brockway v. Allen, 17 Wend., 40.
In that case the law is thus stated: “ Where individuals subscribe their proper names to a promissory note, they are presumptively personally liable, though they add a description of the character in which the note is given; but such presumptioft of liability may be rebutted by showing that the note was, in fact, given by the makers, as a corporation, for a corporate debt due the payee with his knowledge.” (Mann v. Chandler, 9 Mass., 335; Barlow v. Congl. Society, 8 Allen, 460.) The ancient rule, which required a seal to be affixed to every contact of a corporation, has been dispensed with in modern times, except in regard to deeds and other instruments of a solemn and formal character. The promissory notes of a corporation, signed by the proper officer, are binding on the corporation, and not upon the officer. (Angell *585 and Ames on Corp., ch. 8.) The author of this work says that the rule which required the acts of a corporation tó be under seal, is now entirely exploded; and it is well settled that the acts of a corporation, evidenced by a vote written or unwritten, are as completely binding on it, and are as complete authority to its agents, as the most solemn acts done under the corporate seal.
In the present instance the notes are signed by eight persons styling themselves “Vestrymen of St. James’ Parish.” They are joint notes — -not joint and several — thus showing that the notes were the acts of one body, as it were. Then the promise is “for ourselves and our successors”; that is, for ourselves as a corporation and our successors as a corporation. These words are not the language appropriate for a personal obligation, but are most fitting for an official act. Then, also, the face of the notes contains the words “secured by deed of trust.” The deed of trust was recorded, and notice to the world that this security for the notes in question was given by the makers, in their official capacity, for the purchase of property for St. James’ parish.
But, more than this, these vestrymen jointly composed a body politic and corporate under the act of 1798 and the proceedings of the ecclesiastical authorities in organizing the church of this parish. They thus acquired the right to purchase the property, and the right also to make the notes and the deed of trust for the purchase-money. The notes as signed are signed by that corporation as effectually as though they had been impressed by its seal (if there were one). If a corporation may make a note without a seal, how else could these notes have been executed by these eight persons, who constituted the whole corporation, than by all uniting in a joint act, and describing themselves officially, so that all might know they were performing a corporate junction ?
For these reasons, the judgment below must be reversed and a new trial awarded.